1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   WILLIAM ALEXANDER BOYD,

11              Petitioner,                    No. 2: 12-cv-0372 JAM GGH P

12        vs.

13
     W. KNIPP, Warden,
14
                Respondent.              FINDINGS & RECOMMENDATIONS
15   _____/

16                        **INTRODUCTION**

17            Petitioner is a state prisoner proceeding pro se and in forma pauperis with a

18   petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  By this action, petitioner

19   challenges a judgment of conviction entered against him in the Sacramento County Superior Court

20   in 2007.  This matter is now before the court on respondent's motion to dismiss the action as

21   barred by the applicable statute of limitations.

22                  **BACKGROUND AND FACTUAL SUMMARY**

23            Petitioner was convicted in the Sacramento County Superior Court of twenty-four

24   counts of sexual offenses against his daughter, who was under the age of fourteen years old.  Lod.

25   Doc. 1.  On June 8, 2007, he was sentenced to fourteen years plus a consecutive thirty years to

26   life.  Id.  The relevant facts of petitioner's crime were summarized in the unpublished opinion of

                                 1

1  the California Court of Appeal, Third Appellate District, as follows:

2          Defendant and his wife had two children together.
3  One daughter was given up for adoption, and the other daughter, N.B. was born in 1990.

4          Defendant was an extremely angry individual with a habit of yelling at N.B. and his wife on a daily basis.  His remarks to N.B. were frequently rude and demeaning.  On a monthly basis,
5  defendant would become sufficiently angry to throw things around the house.  He once threw the family cat through a closed window
6  when it awakened him.  He also once kicked the dog.

7          Defendant twice pointed a knife at his wife's throat during disputes.

8          Defendant began molesting N.B. when she was in second grade.  Defendant would make her sit on his lap to look at child pornography on the computer while both of them were naked.
9  He also made her take off her clothes and lie on top of him.  He would make her play with his penis, or he would put his mouth on
10  her vagina.

11          On two or three occasions, defendant tried to force her to orally copulate him.  She resisted. Once defendant tried to penetrate her vagina with his penis.  When N.B. told him to stop
12  because it hurt, he responded that he would "save that for when [she was] older."

13          At various times, defendant ejaculated on N.B.'s leg, clothing, and bedding.  Sometimes defendant would say he
14  was sorry, only to molest her again the next day.

15          While his wife was working outside the home, defendant sexually molested N.B. every other day.  Defendant molested her less frequently only after she was in sixth grade.

16          Defendant sexually molested N.B. twice while she was in eighth grade.  She decided to tell someone about the
17  molestations when it appeared that her mother was going back to work.  Because the molestations had been "really bad" while her
18  mother had previously worked outside the home, N.B. was afraid defendant would molest her more frequently and aggressively
19  when her mother resumed employment.

20          In January 2005, N.B. told her best friend that defendant had molested her.  Her friend convinced N.B. that she needed to tell someone, and the two of them went to see the school
21  counselor.  N.B. told the school counselor about the sexual molestations.  After reporting the abuse, N.B. was examined by a
22  pediatric nurse.  During the examination, N.B. described the history of defendant sexually abusing her.  N.B. again recounted
23  the details to a child abuse detective with the Sacramento County Sheriff's Department.

24          When N.B. told her mother about the sexual molestations, her mother expressed disbelief.  This greatly upset
25  N.B.  Eventually, N.B. was removed from her parents' custody, and placed in a foster home.  To facilitate visits with her mother,
26  N.B. was transported to the St. Francis Home for Children.  During

visits, N.B. and her mother repeatedly violated the restriction forbidding them from discussing defendant or the pending criminal case against him.  Her mother said that both of them would end up homeless if N.B. testified about being sexually molested.  Her mother also lamented that she would probably lose her job by having to go to court.  N.B. told Ellen Dunn, the social worker who supervised the visits, that her mother instructed N.B. to deny the sexual molestations.

On February 22, 2005, N.B. excitedly relayed to Dunn that her mother finally believed N.B. had been molested. About a week later, N.B. told Dunn that her mother promised they could get an apartment together if N.B. changed her story.  Her mother warned that both parents would go to jail if N.B. did not recant.  The next day, N.B. left a voice mail message for Dunn indicating that N.B. planned to say she had fabricated all of the accusations.

Within a week, defense counsel informed the child abuse detective that N.B. had recanted.

At trial, N.B. denied that defendant had ever sexually molested her or shown her pornography.  She did admit telling her best friend, the school counselor, the pediatric nurse, and police detective that defendant had sexually molested her. Each of these individuals testified at trial about N.B.'s earlier accounts of being sexually molested by defendant.

Lod. Doc. 2, People v. Boyd, 2009 WL 1875169, *1-*3 (Cal. App. Unpub. 2009); see also Resp't

Reply, Dock. No. 32, 8-9.

On June 30, 2009, the California Court of Appeal, Third Appellate District,

affirmed the judgment of conviction.  Lod. Doc. 2.  On September 9, 2009, the California

Supreme Court denied a petition for review.  Lod. Doc. 4.

Petitioner, prior to the finality of direct review, and subsequently, filed seven state

habeas petitions collaterally attacking his conviction, and was afforded a filing date via the

mailbox rule.[1]  On March 8, 2009, he filed a petition for writ of habeas corpus in the California

Court of Appeal, Third Appellate District, which was denied on March 20, 2009.  Lod. Docs. 5,

6.  Also on March 8, 2009, he filed a petition for writ of habeas corpus in the Sacramento County

---

[1]  The filing dates of the following petitions are based on the mailbox rule.  See Rule 3(d) of the Federal Rules Governing Section 2254 Cases.  These constructive filing dates are based on when petitioner signed the petitions, not when the petitions were actually filed in the courts.

Superior Court, which was denied on March 29, 2009.  Lod. Docs. 7, 8.  On July 1, 2009, he filed a petition for writ of habeas corpus in the California Court of Appeal, Third Appellate District, which was denied on July 16, 2009.  Lod. Docs. 9, 10.  On August 8, 2010, he filed a petition for writ of habeas corpus in the Sacramento County Superior Court, which was denied on September 20, 2010.  Lod. Docs. 11, 12.  On November 19, 2010, he filed a petition for writ of habeas corpus in the California Court of Appeal, Third Appellate District, which was denied on December 29, 2010.  Lod. Docs. 13, 14.  On February 24, 2011, he filed a petition for writ of habeas corpus in the California Supreme Court, which was denied on September 14, 2011.  Lod. Docs. 15, 16.  On February 13, 2012, he filed a petition for writ of habeas corpus in the California Supreme Court, which was denied on untimeliness grounds, citing In re Robbins, 18 Cal. 4th 770, 780 (1998) and In re Clark, 5 Cal. 4th 750, 767-769 (1993), on May 16, 2012.  Lod. Doc. 17; Dock. No. 22.

On February 10, 2012, prior to the final state habeas petition being filed, petitioner filed the instant federal habeas corpus petition in this court.  Dock. No. 1.  Therein, petitioner presents seven grounds for relief.  Id.

## ARGUMENTS OF THE PARTIES

In moving to dismiss, respondent argues that the instant petition is time-barred by the one-year statute of limitations under 28 U.S.C. § 2244(d)(1).  Dock. No. 26.  Respondent also argues that even taking into account tolling of the statute of limitations stemming from petitioner's filing of his state habeas petitions, the statute of limitations period for filing a federal petition expired on January 14, 2012.

In opposition to the respondent's motion, petitioner argues that the statute of limitations for filing a federal petition expired on February 13, 2012, three days after he filed the instant federal habeas corpus petition.  Dock. No. 29.  Alternatively, petitioner argues that he is entitled to equitable tolling of the limitations period.  In arguing that he is entitled to equitable tolling, petitioner asserts that he has new evidence establishing his innocence.  Although it is not

4

1  explicitly argued by petitioner, he may have also intended to argue that this new evidence

2  establishes a credible claim of actual innocence with respect to the charges upon which he was

3  convicted, thus providing an equitable exception of the AEDPA statute of limitations under

4  Schlup v. Delo, 513 U.S. 298 (1995).

5  **LEGAL STANDARDS**

6  I. AEDPA Statute of Limitations

7        Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a

8  one-year period of limitation applies to a petition for writ of habeas corpus filed in federal court

9  by a person in custody pursuant to the judgment of a state court.  28 U.S.C. § 2244(d)(1).  The

10  statute of limitations applies to all federal habeas petitions filed after the statute was enacted on

11  April 24, 1996.  Lindh v. Murphy, 521 U.S. 320, 322-23 (1997).  Under § 2244(d)(1)(A), the

12  time for petitioner to file a federal habeas petition began running when his judgment of

13  conviction became final.[2]  In this regard, on September 9, 2009, the California Supreme Court

14  denied review of petitioner's case.  Lod. Doc. 4.  His conviction became final ninety days

15  thereafter, on December 8, 2009, when the time for him to file a petition for certiorari with the

16  United States Supreme Court expired.  See Bowen v. Roe, 1888 F3d 1157, 1158-59 (9th Cir.

17  2001).  The one-year limitations period for his seeking of federal habeas relief started the next

18  day, December 9, 2009, and, absent any tolling, expired on December 8, 2010.  See Patterson v.

19  Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001).

20      A.   Statutory Tolling

21        The AEDPA statute of limitations is statutorily tolled during the pendency of any

22  "properly filed" state collateral attack on the judgment.  28 U.S.C. § 2244(d)(2); Nino v. Galaza,

23

24      [2]  Although petitioner discussed reasonable delay due to newly discovered facts in his opposition, he does not argue that the one-year statute of limitations was initiated by a later date pursuant to 28 U.S.C. § 2244(d)(1)(D).  Regardless, as discussed in section II., infra, the factual

25  predicates for plaintiff's claims could have been discovered through the exercise of due diligence prior to when petitioner's judgment of conviction became final.  Thus, section 2244(d)(1)(D)

26  would not apply.

183 F.3d 1003, 1006-07 (9th Cir.1999).  Furthermore, the intervals between stages of

California's "unusual system of collateral review" will toll the federal limitations period as long

as the intervals are each of reasonable duration.  Banjo v. Ayers, 614 F.3d 964, 968 (9th Cir.

2010).  Petitioner's first three state habeas petitions were filed and denied or dismissed prior to

the date his judgment of conviction became final.  Thus, the entirety of this first round of habeas

petitions predated the commencement of the federal statute of limitations – no tolling is needed.

Even if the first three habeas petitions should only be considered part of a first round, they were

dismissed for procedural reasons.[3]  Thus, they were not "properly filed" and consequently have

no tolling consequences on the statute of limitations.

Respondent correctly concedes that petitioner's fourth, fifth, and sixth state

habeas petitions were properly filed and statutorily tolled the statute of limitations.  Applying the

mailbox rule[4], petitioner's fourth state habeas petition was constructively filed in the Sacramento

Superior Court on August 8, 2010.  Therefore, 242 days of the one-year limitations period for

petitioner's seeking of federal habeas relief had expired between the date petitioner's conviction

became final and the filing of petitioner's fourth state habeas petition, which initiated the tolling

period.  Petitioner's sixth state habeas petition was denied by the California Supreme Court on

September 14, 2011.  Petitioner's seventh state habeas petition was constructively filed on

February 13, 2012.  Petitioner makes no assertions, nor should he, that this seventh state habeas

petition has any statutory tolling consequences.[5]  Thus, the denial of petitioner's sixth state

---

[3]  The first petition, filed in the California Court of Appeal, Third Appellate District, on March 8, 2009, was denied because the petition had not first been filed in the Superior Court. Lod. Doc. 6.  The second petition, filed in the Sacramento County Superior Court on March 8, 2009, was dismissed for lack of jurisdiction because his appeal of judgment was still pending. Lod. Docs. 8.  The third petition, filed in the California Court of Appeal, Third Appellate District, on July 1, 2009, cited the Superior Court's March 29, 2009 dismissal and was summarily denied.  Lod. Docs. 10.

[4]  See supra note 1.

[5]  The California Supreme Court denied this state habeas petition as untimely and thus it was neither "properly filed" nor "pending" as it pertains to 28 U.S.C. § 2244(d)(1).  Thorson v.

1   habeas petition on September 14, 2011 terminated the statutory tolling period, which ran for 402

2   days.

3           Petitioner argues that he is entitled to additional statutory tolling beyond the 402

4   days.  Petitioner claims that he filed a motion to amend his sixth state habeas petition on July 1,

5   2011 and that the California Supreme Court failed to address the motion to amend prior to

6   denying his habeas petition.  Petitioner asserts that this failure entitles him to thirty additional

7   days of statutory tolling.  Petitioner provides no clear support for this argument, nor can this

8   court find any legal basis for petitioner's contention.  The California Supreme Court's decision

9   was final when it denied petitioner's habeas petition on September 14, 2011.  Cal. Rules of

10  Court, Rule 8.532(b)(2)(C).  Thus, petitioner is not entitled to further statutory tolling beyond the

11  402 days between his fourth state habeas petition filing and the denial of his sixth state habeas

12  petition.

13          Petitioner's judgment of conviction became final on December 8, 2009.  Taking

14  into account the 242 days that passed before the first properly filed state habeas petition, the 402-

15  day statutory tolling period, and the remaining days left in the one year statute of limitations,

16  petitioner had until January 14, 2012 to seek federal habeas relief.  Petitioner constructively filed

17  the instant federal habeas corpus petition in this court on February 10, 2012, which is beyond the

18  one year statute of limitations allowed under 28 U.S.C. § 2244(d)(1).  Therefore, petitioner must

19  show that he is either entitled to equitable tolling of the statute of limitations set forth by the

20  AEDPA or that his case presents an equitable exception to the statute of limitations set forth by

21  AEDPA, otherwise his claims are time barred.

22          B.      Equitable Tolling

23          The United States Supreme Court has confirmed that the AEDPA statute of

24  limitations "is subject to equitable tolling in appropriate cases."  Holland v. Florida, ___ U.S.

25  _____

26  Palmer, 479 F.3d 643, 645 (9th Cir. 2007).

1   ___, 130 S. Ct. 2549, 2560 (2010); see also Doe v. Busby, 661 F.3d 1001, 1011 (9th Cir. 2011).

2   Indeed, because 28 U.S.C. § 2244(d) is not jurisdictional, it is "subject to a 'rebuttable

3   presumption' in favor of 'equitable tolling.'" Holland, 130 S. Ct. at 2560, quoting Irwin v. Dep't

4   of Veterans Affairs, 498 U.S. 89, 95-96 (1990); see also Lee v. Lampert, 653 F.3d 929, 933 (9th

5   Cir. 2011) (en banc).  A petitioner seeking equitable tolling bears the burden of showing (1) that

6   he diligently pursued his rights and (2) that an extraordinary circumstance prevented a timely

7   filing.  Holland, 130 S. Ct. at 2562; Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009).  The

8   diligence required for equitable tolling purposes is "reasonable diligence," not "maximum

9   feasible diligence."  See Holland, 130 S. Ct. at 2565; see also Bills v. Clark, 628 F.3d 1092, 1096

10  (9th Cir. 2010).  As to the extraordinary circumstances required, the Ninth Circuit has held that

11  the circumstances alleged must make it impossible to file a petition on time, and that the

12  extraordinary circumstances must be the cause of the petitioner's untimeliness.  See Bills, 628

13  F.3d at 1097, citing Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir.2003).  This is a very high

14  threshold, "lest the exceptions swallow the rule."  See Miranda v. Castro, 292 F.3d 1063, 1066

15  (9th Cir. 2002).  In addition, '[w]hen external forces, rather than a petitioner's lack of diligence,

16  account for the failure to file a timely claim, equitable tolling may be appropriate.'"  Lott v.

17  Mueller, 304 F.3d 918, 922 (9th Cir. 2002), quoting Miles v. Prunty, 187 F.3d 1104, 1107 (9th

18  Cir. 1999).  Whether a prisoner is entitled to equitable tolling under AEDPA will depend on a

19  fact-specific inquiry by the habeas court which may be guided by "decisions made in other

20  similar cases."  Holland, 130 S. Ct. at 2563; see also Spitsyn, 345 F.3d at 799; Whalem/Hunt v.

21  Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (per curiam).

22          In his opposition, petitioner applies an improper legal standard, arguing that he is

23  entitled to equitable tolling for the time between the September 14, 2011 and the February 13,

24  2012 habeas petition filings with the California Supreme Court because the delay was

25  /////

26  /////

1  reasonable.[6]  As previously discussed, the California Supreme Court denied the February 13,

2  2012 petition on untimeliness grounds and thus it was not properly filed.  "When a state post-

3  conviction petition is untimely under state law, that is the end of the matter for purposes of §

4  2244(d)(2).  A state petitioner bears the risk that he may try in good faith to exhaust state

5  remedies . . . only to find out at the end that he was never properly filed."  Sanchez v. Yates,

6  2013 WL 29874 (9th Cir. 2013) (quotations and emphasis omitted), citing Pace v. DiGuglielmo,

7  544 U.S. 408, 415, 125 S. Ct. 1807, 161 L.Ed.2d 669 (2005).  Thus, even if petitioner's delay

8  was reasonable, that alone would not justify equitable tolling.[7]

9          Although petitioner failed to directly address the applicable legal standard for

10  equitable tolling – that he diligently pursued his rights and that an extraordinary circumstance

11  prevented a timely filing – this court will construe petitioners assertions regarding "reasonable

12  delay" as though applied to the appropriate standard.  Petitioner's assertions that his delay in

13  filing was caused by additional claims in his habeas petition and his reliance on his wife to

14  "marshal" the new evidence supporting those claims would go towards an argument that he

15  diligently pursued his rights.  Petitioner's contention that his delay in filing was also caused by

16  prison mail room staff that "intercepted" some of the new evidence his wife had found and sent

17  him would go towards an argument that an extraordinary circumstance prevented a timely filing.

18          Petitioner clearly would be unable to establish that an extraordinary circumstance

19  prevented a timely filing.  Petitioner has the burden of proving that an extraordinary circumstance

20  made it impossible to file his petition on time and that the extraordinary circumstance was the

21  cause of the untimeliness.  See Bills, 628 F.3d at 1097.  Petitioner has made only a naked

22

23      [6] Petitioner inappropriately cited to California law that is irrelevant in opposing the motion to dismiss at issue.

24      [7] Also, because this state habeas petition was filed after the statute of limitations for
25  seeking federal habeas relief had closed, it is worth noting that the filing of a new state habeas
    petition cannot reinitiate or revive the limitations period once it has expired.  See Ferguson v.
26  Palmateer, 321 F.3d 820, 823 (9th Cir. 2003); see also Jiminez v. Rice, 276 F.3d 478, 481 (9th
    Cir. 2001).

assertion that after July 1, 2011, new and relevant evidence was intercepted by mail room staff at the prison.  Petitioner did not argue that this evidence was an essential aspect of his claims nor does he explain how this incident affected the timeliness of his filing.  While in prison, petitioner filed an inmate appeal regarding this incident in which he states that the documents were three pictures of the victim.  Dock. No. 29, Ex. A.  First, it is unclear how these pictures could constitute new and relevant evidence necessary for petitioners claims.  Second, being that petitioner stated that these documents have never been found or returned, it is also unclear how not receiving these documents prevented a timely filing since petitioner filed three habeas petitions after this alleged incident took place.  Even if there was other relevant evidence that was "intercepted," this incident clearly did not prevent petitioner from filing his federal habeas corpus petition before the statute of limitations expired.

Petitioner has failed to carry his heavy burden of establishing that an extraordinary circumstance prevented a timely filing.[8]  Moreover, petitioner's showing is so weak that the an evidentiary hearing is not necessary to flesh out the contentions.  See Roberts v. Marshall, 627 F.3d 768, 773 (9th Cir. 2010).  Therefore, he is not entitled to equitable tolling of the § 2244(d)(1) one-year statute of limitations.

C.   Actual Innocence Equitable Exception

"[A] credible claim of actual innocence constitutes an equitable exception to AEDPA's limitations period, and a petitioner who makes such a showing may pass through the Schlup[9] gateway and have his otherwise time-barred claims heard on the merits."  Lampert, 653 F.3d at 932.  In order to obtain equitable tolling on this ground, however, petitioner must demonstrate "that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt."  Id. at 937.  "Actual innocence means factual innocence, not mere

---

[8]  Because the lack of a sufficiently extraordinary circumstance is abundantly clear, it is not necessary to address the murkier issue of whether petitioner diligently pursued his rights.

[9]  Schlup v. Delo, 513 U.S. 298 (1995).

1   legal insufficiency." Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L.Ed.2d

2   828 (1998).  The actual innocence exception applies to a "narrow class of cases implicating a

3   fundamental miscarriage of justice."  Lampert, 653 F.3d at 938.

4           The habeas petitioner must "support his allegations of constitutional error with

5   new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness

6   accounts, or critical physical evidence – that was not presented at trial."  Schlup, 513 U.S. at 324.

7   The habeas court then "consider[s] all the evidence, old and new, incriminating and

8   exculpatory," admissible at trial or not.  House v. Bell, 547 U.S. 518, 538, 126 S. Ct. 2064, 165

9   L.Ed.2d 1 (internal quotation marks omitted); see also Carriger v. Stewart, 132 F.3d 463, 477-78

10  (9th Cir. 1997).  In considering this evidence, the court "must assess the probative force of the

11  newly presented evidence in connection with the evidence of guilt adduced at trial," and "may

12  consider how the timing of the submission and the likely credibility of the affiants bears on the

13  probable reliability of that evidence."  Schlup, 513 U.S. at 332.  Then the habeas court makes a

14  "'probabilistic determination about what reasonable, properly instructed jurors would do.'"

15  House, 547 U.S. at 538, quoting Schlup, 513 U.S. at 329.

16          Although petitioner did not directly assert a claim of actual innocence, he states

17  that his newly discovered evidence "could have substantially altered the juries verdict."  Dock.

18  No. 29 at 6.  This new evidence allegedly shows that petitioner was not in California or was away

19  from the home working during periods of time when the crimes took place.  In support of his

20  contentions, petitioner offers a variety of messages between he and his wife and documents

21  showing his proof of employment.  Dock. No. 1, Ex. 3-5; Dock. No. 29, Ex. 1-19.  To begin

22  with, none of this evidence is new, nor does it constitute scientific evidence, trustworthy

23  eyewitness accounts, or critical physical evidence.

24          As for the messages between petitioner and his wife, they have no probative value

25  and contain little if any substantive information as it pertains to petitioner's innocence.  Also, the

26  record states that after several attempts petitioner's wife was successful at convincing the victim,

her daughter, not to testify against petitioner.  Thus, even if there was some evidence in these messages that indicate petitioner's innocence it would not be given much weight.  The record and the relationship between the authors of these messages do not support a positive credibility assessment of petitioner's wife.

As for the employment records, it is not clear how they establish petitioner's innocence.  He asserts that the records prove he was never present on the dates of the crimes he was convicted of, but does not address the fact that he was convicted of numerous crimes occurring over the course of several years.  Regardless, petitioner's evidence undermines his own argument.  One document indicated that petitioner was "transporting [an] unauthorized passenger" who happened to be his daughter, N. B., the victim of the crimes he was convicted of.  Doc. 1, Ex. 4 at 2.  Thus, these records could not establish that petitioner did not commit sexual crimes against his daughter merely because he was away from the home as petitioner claims.

Based on the evidence now offered by petitioner and the evidence brought against petitioner at his trial, this court does not find that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  It is clear that this case does not fall into the narrow class of cases implicating a fundamental miscarriage of justice.  And again, an evidentiary hearing is not necessary as the proof submitted thus far would indicate that such a hearing would be futile.  See Lee v. Lampert, 653 F.3d at 936-937 (exacting standard for actual innocence evidentiary hearings).  Therefore, the actual innocence exception the AEDPA one-year statute of limitations does not apply here.

**CONCLUSION**

ACCORDINGLY, the undersigned recommends that respondent's motion to dismiss (Dock. No. 26.) be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may

file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven (7) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 16, 2013

<u>/s/ Gregory G. Hollows</u>
UNITED STATES MAGISTRATE JUDGE

GGH: 33
boyd.0372.ord.